UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OLYMPIC VISTA HOMEOWNERS
ASSOCIATION,

                Plaintiff,

   v.

STATE FARM FIRE AND
CASUALTY COMPANY,

                Defendant.

C22-0683 TSZ

ORDER

THIS MATTER comes before the Court on a motion, docket no. 28, for partial summary judgment brought by defendant State Farm Fire and Casualty Company ("State Farm"). Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

In this action, plaintiff Olympic Vista Homeowners Association ("Olympic Vista") asserts two claims against State Farm: (i) breach of the insurance contract between the parties; and (ii) bad faith in violation of Washington's Consumer Protection Act ("CPA"). See Am. Compl. at ¶¶ 17–28 (docket no. 16). In its motion for partial summary judgment, State Farm seeks dismissal of only the first claim for breach of contract. State Farm asserts three separate grounds for relief: (i) Olympic Vista failed to

ORDER - 1

commence suit within the contractual two-year-limitation period; (ii) the loss at issue, allegedly caused by rain, was not "accidental" within the meaning of the coverage provision of the insurance policy; and (iii) the causes of the loss at issue are expressly excluded from coverage.[1]  Because the Court concludes that the breach-of-contract claim was not timely filed, it need not address whether the loss at issue was "accidental" or whether State Farm is justified in invoking the exclusions for defective construction, repeated seepage or leakage of water, or wear and tear.

The Olympic Vista condominium was built in 1966.  Centolanza Dep. at 26:10–11, Ex. A to Rogers Decl. (docket no. 30).  It has eight units, two on each of four levels, including the basement.  Id. at 26:14–19.  State Farm insured the property from September 30, 1976, until October 31, 2003.  Am. Compl. at ¶ 18 (docket no. 16); Answer at ¶ 18 (docket no. 21) (indicating that coverage was renewed annually until it was cancelled in October 2003 for non-payment of the premium).  The policy that was in effect from September 30, 2002, until September 30, 2003, contained the following provisions:

> **6.**  **Legal Action Against Us**.  No one may bring legal action against us under this insurance unless:
>
> a.   there has been full compliance with all of the terms of this insurance; and
>
> b.   the action is brought within two years after the date on which the accidental direct physical loss occurred.  But if the law of

---

[1] State Farm also raised arguments concerning damage to the roof and basement utility or storage area. Olympic Vista has confirmed that it makes no claim such damage is covered by the insurance policy at issue.  *See* Pl.'s Resp. at 10 (docket no. 31).

ORDER - 2

> the state in which this policy is issued allows more than two years to bring legal action against us, that longer period of time will apply.
>
> **14.    Policy Period, Coverage Territory**.  We cover loss commencing during the policy period and within or between the coverage territory.  The coverage territory is the United States of America (including its territories and possessions), Puerto Rico and Canada.

Condominium/Association Policy [hereinafter, the "Policy"], Section I (Conditions) at ¶¶ 6 & 14, Ex. C to Rogers Decl. (docket no. 30 at 224–25); <u>see also</u> Renewal Certificate (docket no. 30 at 191).  Olympic Vista initiated this litigation on May 20, 2022, over 18½ years after State Farm ceased insuring the property.  <u>See</u> Compl. (docket no. 1).

Olympic Vista asserts that the loss at issue did not occur, and the suit-limitation period did not begin running, until February 19, 2021, when J2 Building Consultants, Inc. ("J2BC"), which had been retained by Olympic Vista, performed a preliminary invasive investigation and discovered "hidden water damage."  <u>See</u> J2BC Report at 3, Ex. 4 to Johanson Dep., Ex. B to Rogers Decl. (docket no. 30 at 136).  A subsequent examination of the exterior of the condominium, during which insurance company representatives were present, was conducted on August 9, 2021.[2]  <u>Id.</u>  State Farm argues that this lawsuit

---

[2] J2BC ultimately opined that the "proximate cause of the hidden water damage" was "wind-driven rain events" combined with (i) damage to the weather resistive barrier resulting from water intrusion; (ii) inadequate drainage behind the stucco system; (iii) omitted or damaged sealant joints at the building's penetration and fenestration openings; (iv) omitted, improper material, or mis-lapped weather resistive barrier at the fenestration openings; and (v) lack of flashing at key locations.  J2BC Report at 5 (docket no. 30 at 138).  State Farm's expert, who visited the site in January and April 2022, attributed the "decay present in plywood sheathing and framing in the exterior walls at Olympic Vista" to the "inadequate installation of the building paper and/or the inadequate installation of flashings at these transitions" (on the south wall of the building enclosure), which "initiated the sequence of events that allowed rain and wind-driven rain to infiltrate past the building enclosure system where it was absorbed by the underlying plywood sheathing and framing."  JRP Eng'g, Inc. Report at 16–17, Ex. B to Perrault Decl. (docket no. 29 at 31–32); <u>see also</u> Perrault Decl. at ¶ 3 (docket no. 29).  Both experts agree that "faulty, inadequate,

ORDER - 3

needed to be filed within two years after the loss commenced or within two years after the policy period ended, *i.e.*, by October 31, 2005.[3]  For the reasons discussed below, the Court agrees with State Farm.

**Discussion**

Under Washington law,[4] the parties to an insurance contract may agree to limit the amount of time during which an insured may sue the insurer, but for property-insurance policies, the period must be at least one year.  See RCW 48.18.200(1)(c).  State Farm's two-year suit-limitation provision comports with Washington's durational requirement.  Olympic Vista does not suggest that State Farm waived or should be equitably estopped

---

unsound or defective" construction in 1966, which constitutes an excluded peril, see Policy at Section I (Losses Not Insured) at ¶ 3(b)(3) (docket no. 30 at 214), played a role in causing the subsequent water damage to the plywood sheathing and framing of the building.

[3] Olympic Vista contends that State Farm's motion should be limited to the 2002–2003 Policy because it has not proffered a copy of any preceding policies.  State Farm counters that the absence of information about the exact policies issued prior to 2002 stems from Olympic Vista's delay in tendering a claim, and that Olympic Vista, not State Farm, bears the burden of proving the terms of the allegedly-breached insurance contracts.  See State Farm's Reservation of Rights Letter dated Dec. 29, 2021, Ex. 3 to Guse Decl. (docket no. 33-3 at 2–3).  Moreover, State Farm has confirmed that the "policy booklet FP-6109 was at the renewal of [Olympic Vista's] policy 98-40-8867-0 on September 30, 1990, and remained in effect until the policy cancelation in 2003."  Id. (docket no. 33-3 at 3).  Both the two-year suit-limitation provision and the clause defining the policy period are contained in the policy booklet identified as FP-6109.  See Ex. C to Rogers Decl. (docket no. 30 at 208 & 224–25).  The Court is satisfied that no genuine dispute of material fact exists concerning the relevant terms of the policies issued by State Farm between 1990 and 2003.  See Fed. R. Civ. P. 56(a).

[4] The parties do not dispute that Washington law governs.  Washington courts construe insurance policies as a whole, giving the policy the "fair, reasonable, and sensible construction" that an average person purchasing insurance would.  Vision One, LLC v. Phila. Indem. Ins. Co., 174 Wn.2d 501, 512, 276 P.3d 300 (2012).  Inclusionary clauses are liberally construed in favor of coverage, while exclusionary provisions are interpreted strictly against the insurer.  Assurance Co. of Am. v. Wall & Assocs. LLC of Olympia, 379 F.3d 557, 560 (9th Cir. 2004) (summarizing Washington law).  If the language of a policy is "clear and unambiguous," the Court must "enforce it as written and may not modify it or create ambiguity where none exists."  Weyerhaeuser Co. v. Com. Union Ins. Co., 142 Wn.2d 654, 666, 15 P.3d 115 (2000).

ORDER - 4

from invoking the contractual limitation period, or that the clause is somehow ambiguous or does not mean what it says.  Rather, Olympic Vista relies on cases interpreting policies that, unlike the one issued by State Farm, provided coverage for "collapse" caused by "hidden decay."  See *Panorama Vill. Condo. Owners Ass'n Bd. of Dir. v. Allstate Ins. Co.*, 144 Wn.2d 130, 134–35, 26 P.3d 910 (2001); *Eagle Harbour Condo. Ass'n v. Allstate Ins. Co.*, No. C15-5312, 2016 WL 499301, at *2 (W.D. Wash. Feb. 9, 2016); *Greenlake Condo. Ass'n v. Allstate Ins. Co.*, No. C14-1860, 2015 WL 11988945, at *2 n.4 (W.D. Wash. Dec. 23, 2015);.

In *Panorama Village*, the Washington Supreme Court held:

> Where a policy protects against *risk of direct physical loss from hidden decay* and requires the insured to bring suit within one year after a loss occurs, the date of loss is the earlier of either (1) the date of actual collapse or (2) the date when the decay which poses the risk of collapse is no longer obscured from view.

144 Wn.2d at 133–34 (emphasis added).  The policy at issue in *Panorama Village* required the insurer, Allstate Insurance Company ("Allstate"), to "pay for *risk* of direct physical loss involving *collapse* of a covered building . . . caused . . . by . . . *hidden decay*."  *Id.* at 134–35 (emphasis added).  The policy further defined the suit-limitation period as being one year "after a loss occurs."  *Id.* at 138–39.  Based on the language of the insurance contract, the Washington Supreme Court reasoned that the insured peril (*i.e.*, the risk of direct physical loss involving collapse) "continues to exist until at least the earlier of either (a) actual collapse or (b) the end of 'hidden decay.'"  *Id.* at 140.  Subsequent decisions by other judges in this district have concerned similar provisions in policies also issued by Allstate.  In *Greenlake Condominium*, the policy covered "hidden

ORDER - 5

decay leading to risk of collapse." 2015 WL 11988945, at *2 n.4. The policy in <u>Eagle Harbour</u> contained exactly the same language as the clause at issue in <u>Panorama Village</u>. 2016 WL 499301, at *2.

None of these cases support the result that Olympic Vista seeks because, in this case, the Policy does not insure against either collapse caused by hidden decay or risk of collapse. <u>See</u> Policy at Amendatory Collapse Endorsement (docket no. 30 at 205). Unlike Allstate's policies, State Farm's Policy insures "only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building." <u>Id.</u> Collapse is defined as "actually fallen down or fallen into pieces"[5] and, to be covered, it must be "directly and immediately caused <u>only</u> by one or more" of the enumerated causes, none of which are hidden decay. <u>See id.</u> (emphasis added).[6] Indeed, the Policy excludes loss caused by "decay, deterioration, [or] hidden or latent defect."

---

[5] In the absence of a contractual definition, Washington courts construe "collapse" as meaning "the substantial impairment of structural integrity of a building or part of a building that renders such building or part of a building unfit for its function or unsafe in a manner that is more than mere settling, cracking, shrinkage, bulging, or expansion." <u>See</u> <u>Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.</u>, 183 Wn.2d 485, 492, 352 P.3d 790 (2015). In this case, however, the Policy explicitly specifies a "rubble-on-the-ground" standard, <u>cf.</u> <u>Queen Anne Park Homeowners Ass'n v. State Farm Fire & Cas. Co.</u>, No. C11-1579, 2012 WL 5456685, at *3 & n.3 (W.D. Wash. Nov. 8, 2012) (discussing authorities using the "rubble-on-the-ground" interpretation even in the absence of a contractual definition of collapse), and Olympic Vista makes no argument that coverage is owed under the Amendatory Collapse Endorsement.

[6] Covered causes of collapse include fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, leakage from fire extinguishing equipment, sinkhole collapse, volcanic action, falling objects, weight of snow, ice or sleet, weight of rain that collects on a roof, accidental discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system or appliance containing water or steam, weight of contents, equipment, animals or people, and use of defective materials or methods if the collapse occurs during the course of construction of the building. Policy at Amendatory Collapse Endorsement & Definition of "Specified Causes of Loss" (docket no. 30 at 205 & 209).

ORDER - 6

1  *See id.* at Section I (Losses Not Insured) at ¶ 2(d) (docket no. 30 at 213).  Thus, unlike in *Panorama Village* and the decisions of this district that rely on it, in this matter, the insured (Olympic Vista) cannot identify the requisite covered peril (for example, the risk of collapse caused by hidden decay for which the condominiums in the previously mentioned cases were insured) that continued to exist until it was revealed within the two-year period prior to filing suit.  *See Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co.*, 200 Wn.2d 208, 218, 515 P.3d 525 (2022) ("The insured bears the burden of showing that coverage exists . . . ."); *see also Seattle Tunnel Partners v. Great Lakes Reins. (UK) PLC*, 200 Wn.2d 315, 321, 516 P.3d 796 (2022) ("Once the insured shows the loss falls within the scope of the policy's coverage, the burden shifts to the insurer to show 'the loss is excluded by specific policy language' in order to avoid coverage.").

Olympic Vista's reliance on *Holden Manor Homeowners Ass'n v. Safeco Insurance Co. of America*, No. C15-1676, 2016 WL 3349339 (W.D. Wash. June 16, 2016), is also misplaced.  In *Holden Manor*, the court explicitly declined to rule that the holding of *Panorama Village* applies regardless of whether the "hidden nature" of the damage is "a prerequisite to coverage," stating that it "need not go that far to deny" the defendants' motion for summary judgment.  *Id.* at *2–3.  In *Holden Manor*, the defendants asserted that the policy at issue did not cover the risks of loss resulting from hidden damage or decay, but they did not establish that the policy expressly excluded those risks.  *Id.* at *3.  Because the policy was an all-risk policy, as opposed to a named-peril policy, and did not exclude loss caused by hidden damage or decay, any such loss was covered, and the plaintiff's suit was not time-barred.  *Id.*; *see also Vision One*, 174

ORDER - 7

1 Wn.2d at 513–14 (explaining that named-peril policies cover only the specific risks

2 enumerated in the policy, while all-risk policies provide coverage for all risks except the

3 specific risks that are excluded). Unlike in *Holden Manor*, in this matter, decay and

4 hidden or latent defect are explicitly excluded.[7]

5       The Policy required Olympic Vista to commence litigation within two years after

6 the "accidental direct physical loss occurred," and it covered only "loss commencing

7 during the policy period." Policy, Section I (Conditions) at ¶¶ 6 & 14 (docket no. 30 at

8 224–25). In this context, "'commence' refers to the time the damage first began, not to

9 when it was discovered." *Ellis Ct. Apts. Ltd. P'ship ex rel. Woodside Corp. v. State Farm*

10 *Fire & Cas. Co.*, 117 Wn. App. 807, 814, 72 P.3d 1086 (2003);[8] *see also Mercer Place*

11 *Condo. Ass'n v. State Farm Fire & Cas. Co.*, 104 Wn. App. 597, 603–05, 17 P.3d 626

12 (2000) (ruling that the policy at issue provides "coverage for collapse, *i.e.*, substantial

13 impairment to structural integrity, during the policy period, and does not extend to

14 damage that will, unless the underlying condition causing progressive structural decay is

15 corrected, eventually reach a point of collapse outside the policy period"). Given this

---

[7] The decision in *Sunwood Condominium Ass'n v. Travelers Casualty Insurance Co. of America*, No. C16-1012, 2017 WL 5499809 (W.D. Wash. Nov. 16, 2017), is likewise inapposite. In that case, an insurer attempted to persuade the court that the holding of *Panorama Village* is limited to policies providing coverage for collapse caused by hidden decay. *Id.* at *6. Without much analysis, the *Sunwood* Court disagreed, citing to *Holden Manor* and *Greenlake Condominium*, which involved policies that covered loss resulting from hidden decay. *See id.*.

[8] In *Ellis Court*, Division I of the Washington Court of Appeals affirmed the trial court's decision to strike State Farm's two-year suit-limitation defense, also called the "known loss defense," reasoning that the insurance contract, which covered collapse caused by hidden decay, did not define "hidden" as "unknown," as opposed to "out of sight" or "concealed." 117 Wn. App. at 817–19. This portion of the *Ellis Court* opinion is not on point because, in this case, the Policy does not insure against collapse caused by hidden decay, but rather excludes decay and hidden or latent defect.

ORDER - 8

meaning of the terms "commence" or "commencing," the Policy must be construed as precluding Olympic Vista's breach-of-contract claim for failure to timely assert it. To be covered, a loss must have commenced on or before the last day of the policy period, *i.e.*, October 31, 2003, and to be timely brought, a lawsuit must have been filed within two years thereafter, *i.e.*, by October 31, 2005, at the latest. Olympic Vista missed the deadline by over 16½ years. Interpretation of the provisions of an insurance policy is purely a matter of law, *see* Hill & Stout, 200 Wn.2d at 218, and the Court concludes that State Farm has met its burden under Federal Rule of Civil Procedure 56(a) of establishing an absence of genuine dispute as to any material fact and entitlement to judgment as a matter of law.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) State Farm's motion for partial summary judgment, docket no. 28, is GRANTED, and Olympic Vista's claim against State Farm for breach of contract, alleged as the First Claim in the Amended Complaint, docket no. 16, is DISMISSED with prejudice as time-barred.

(2) The parties shall meet and confer and file a Joint Status Report within fourteen (14) days of the date of this Order concerning (i) the effect, if any, of the Court's ruling on Olympic Vista's CPA claim, (ii) how long a trial, if necessary, on Olympic Vista's CPA claim is anticipated to last, and (iii) whether the parties consent to conduct the jury voir dire process virtually via the ZoomGov platform.

(3)     The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 25th day of August, 2023.

*Thomas S. Zilly*
Thomas S. Zilly
United States District Judge

ORDER - 10